Jeffrey J. Hunt (5855) (jhunt@parrbrown.com)
Austin J. Riter (11755) (ariter@parrbrown.com)
Chad S. Pehrson (12622) (cpehrson@parrrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840

*Attorneys for Growgenix Solutions LLC dba Groviv,
Grow Solutions Tech LLC, and Nu Skin Enterprises,
Inc.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GROWGENIX SOLUTIONS LLC, a Utah limited liability company, dba GROVIV; GROW SOLUTIONS TECH LLC, a Utah limited liability company, and NU SKIN ENTERPRISES, INC., a Delaware corporation;<br><br>          Plaintiffs,<br><br>   vs.<br><br>ROBERTS INTERNATIONAL AGRICULTURAL DEVELOPMENT, LLC, a Utah limited liability company; ROBERTS CONSULTING & MARKETING, LLC, a Utah limited liability company; ROBERTS DAIRY, INC., a Utah corporation; DON ROBERTS, an individual; and DOES 1-10,<br><br>       Defendants. | **COMPLAINT**<br><br>**(For Declaratory Relief)**<br><br><br>Case No. 2:19-cv-00359-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiffs Growgenix Solutions LLC dba Groviv ("Groviv"), Grow Solutions Tech LLC ("Grow Solutions"), and Nu Skin Enterprises, Inc. ("Nu Skin"), (collectively, "Plaintiffs") hereby file this Complaint against Defendants Roberts International Agricultural Development,

LLC ("Roberts International"), Roberts Consulting & Marketing, LLC ("Roberts Consulting"), Roberts Dairy, Inc. ("Roberts Dairy"), Don Roberts ("Roberts"), and Does 1-10 (collectively, "Defendants"), and for their claims allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Growgenix Solutions LLC is a Utah limited liability company, doing business as Groviv, located in Utah County, Utah, and is a wholly owned subsidiary of Nu Skin.

2. Grow Solutions is a Utah limited liability company located in Utah County, Utah, and is a wholly owned subsidiary of Nu Skin.

3. Nu Skin is a Delaware corporation with its principal place of business in Utah County, Utah.

4. Roberts International is a Utah limited liability company located in Beaver County, Utah.

5. Roberts Consulting is a Utah limited liability company located in Beaver County, Utah.

6. Roberts Dairy is a Utah corporation located in Beaver County, Utah.

7. Roberts is an individual residing in Beaver County, Utah, and is an owner and a principal of Roberts International, Roberts Consulting, and Roberts Dairy.

8. Does 1-10 are entities or individuals whose identities are as yet unknown and whose conduct is substantially similar to, involved with, and/or related to the other Defendants' conduct described herein.

9.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that the federal claims for declaratory judgment alleged in this Complaint arise under the laws of the United States.

10. This Court has supplemental jurisdiction over the remaining claims alleged in this Complaint pursuant to 28 U.S.C. § 1367, in that those claims are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### Background of the Parties

12. Founded in 1984, Nu Skin is a global direct selling company that develops and distributes premium-quality, innovative personal care products and nutritional supplements.

13. Groviv and Grow Solutions were registered under the laws of the State of Utah on July 15, 2015, and August 26, 2015, respectively.

14. Groviv was organized for the purpose of commercializing and selling horticulture lighting.  Grow Solutions was organized for the purpose of owning intellectual property, technology, patents, and trade secrets that would be licensed for commercialization and use by Groviv.

15. Individuals who founded Groviv and related companies included Mark Stott, Gary Bret Millar, Todd Tueller, Jonathan Black ("Black"), and others.

16. In February 2016, Nu Skin acquired a 70% ownership interest in Groviv and, in June 2017, acquired the remaining 30% interest.

17. In connection with its acquisition of Groviv, Nu Skin also acquired a 100% ownership interest in Grow Solutions.

18. Through the use of innovative technology, in which Grow Solutions owns the intellectual property rights, Groviv seeks to commercialize a system of "controlled environment agriculture" to grow sustainable, clean, and nutritious crops using a fraction of the resources of traditional agriculture. A core part of the technology includes use of innovative low-heat lighting applied to horticulture together with software and data in order to give plants the optimum amount of nutrients, water, lighting, and atmospheric conditions. The core technology can be utilized in climate-controlled structures year-round in nearly any environment, and thereby solves many conventional agriculture problems relating to fresh water, arable land, chemical run-off, weather, and energy use.

19. A promising portion of the technology owned by Grow Solutions and used by Groviv is referred to as "GroPod" technology, which utilizes the core technology in an automated system to produce high-density agriculture (currently focused on wheatgrass) for (among other potential uses) beef and dairy cattle.

20. The GroPod technology was developed independently and exclusively by the inventors named on Grow Solutions' Patent No. US 10,034,434 B2 and patent applications concerning the GroPod technology.

21. Roberts is a dairy farmer. On information and belief, through Roberts Dairy and/or other entity(s), Roberts and his brother own 5,000 acres of land, 4,000 dairy cows, and feedlots for 1,000 beef cattle in Beaver County.

22. Roberts International presents itself as an agricultural development company that, according to its website, was established to develop and structure agricultural development projects in various international markets and to provide strategic agricultural business solutions.

23. On information and belief, Roberts Consulting provides consulting and management services relating to agricultural development.

### Groviv and Roberts Pursue an
### Agricultural Testing Vendor Relationship

24. In or about December 2016, Groviv was looking for a farming operation to test wheatgrass produced with lighting technology for use as feed for dairy cows, and Black suggested that Roberts should be contacted to explore that concept.

25. In December 2016, Black arranged for a meeting with Roberts for himself and Ritch Wood ("Wood"), a member of Groviv's Board of Managers and at that time Nu Skin's CFO, at Roberts's home in Beaver, Utah. The purpose of their visit was to explore the prospect of a relationship with Roberts as an agricultural technology testing vendor for Groviv.

26. In January 2017, Roberts and several of his family members met with Groviv employees and Wood, who was still a member of Groviv's Board of Managers, to further discuss the potential for a testing vendor relationship between Groviv and Roberts.

27. Over the course of the next year, Groviv's communications with Roberts were limited to discussing the potential for Roberts's dairy to test the use of wheatgrass produced by Groviv technology and planning to implement that testing. In addition, the communications expanded over time to include potential involvement of Roberts to provide additional limited services as a consultant or employee. These communications included:

      a.      On July 6, 2017, several Groviv representatives and scientists met with Roberts in Beaver County to see Roberts's dairy farm and to discuss the potential for testing the use of the GroPod technology with Roberts's cows and dairy.

      b.      In July or August 2017, Roberts and his family met with several Groviv representatives, where Roberts explained what he was doing on his dairy farm, including his feed rations, and the parties discussed Roberts's interest in what the GroPod technology could do to provide feed for his cows and dairy.

      c.      Over the course of the next several weeks and months, various meetings and discussions were focused on various aspects of forage feed for dairy cattle and how wheatgrass produced using Groviv technology could be tested at Roberts' dairy.

28.      On December 11, 2017, Groviv began the product research study at Roberts's farm. The study involved feeding Roberts's heifer cattle from wheatgrass produced at Groviv's Provo Vertical Farm.

29.      Groviv contributed all costs of the 6-days-per-week production and delivery for 4 months as part of the feed study.

30.      As the feed testing study progressed, however, Groviv began considering and weighing inherent challenges regarding Roberts as a testing vendor partner. One difficulty involved technological limitations of Roberts' farming operation, which was not sophisticated enough to provide the hoped-for data and feedback on performance of the feed produced by Groviv. In addition, the farm in Beaver was too far away from Groviv's Provo Vertical Farm and operations to make the testing practical and economical.

## Roberts's Ownership and General Partnership Allegations

31. Sometime in approximately late 2017, Groviv was surprised when Roberts began to claim an amorphous, undefined ownership interest relating to Groviv.

32. As discussed above, Groviv had been established in 2015, well before Roberts had been introduced to Groviv in 2016. The individuals who founded Groviv were the only individuals who could be considered "founding partners" relating to Groviv (through entities they created), and Nu Skin bought out each of their interests in acquiring ownership of Groviv.

33. Neither Groviv nor Nu Skin ever had talked with Roberts about any ownership participation or any sort of general partnership arrangement that would exhibit an association between one another as co-owners of a business for profit or the equal sharing of ownership and management.

34. There was never any written general partnership agreement between Groviv (or any Plaintiff) on the one hand and Roberts on the other hand.

35. Nor was there ever any oral general partnership agreement between Groviv (or any Plaintiff) on the one hand and Roberts on the other hand.

36. Rather, as compensation for Roberts's limited role as an agricultural testing vendor or an employee or consultant, Groviv representatives had discussed with Roberts only the potential of salary, expense reimbursement, consulting compensation, and stock options in Groviv's parent company Nu Skin that would vest as growth targets were met at Groviv and were similar to options granted to other Groviv employees.

37. Accordingly, on January 5, 2018, Bentley and other Groviv representatives presented Roberts with a PowerPoint that spelled out details of the exact nature of Roberts's relationship with Groviv and the scope of potential compensation for his services.

38. The PowerPoint, entitled "Don Roberts: Partnering Gives-Gets," states that Roberts would have "financial upside in the growth/sale of Groviv products from his efforts to help build and grow the company as a partner" in the form of "[s]tock options with incentives that vest as key growth targets are met as a team" and "[p]art-time employee status for budgeting, payment for travel & expenses, etc."

39. Specifically, the PowerPoint states that, as part of the compensation plan, Roberts would get "10,000 options with milestones based on sales for past work done" and part-time employment including a salary of $43,000 per year, service on an Advisory Board, and payment of his out-of-pocket expenses.

40. The PowerPoint further states that, for his role as a member of Groviv's advisory team, Roberts would be compensated $140,000 for one year with a renewal option.

41. The PowerPoint also states that "Roberts Dairy [would be] recognized as one of the founding dairy partners."

42. These PowerPoint terms reflected how Groviv used the term "partner" in referring to Roberts—in the colloquial sense of collaborative "partnering" (i.e., working) with a vendor, independent contractor, consultant, or employee, who for his services would receive discrete economic compensation and the marketing benefit of public recognition of his role as a vendor, independent contractor, consultant, or employee.

43. On January 6, 2018, Bentley and Roberts discussed by phone Roberts's feedback and concerns about the meeting the day before and the PowerPoint compensation plan. During the phone call, Roberts made various statements expressing his disappointment with the plan, including that he felt like he was being demoted and that his role was not sufficiently respected. In response, Bentley stated that the PowerPoint accurately reflected Roberts's limited role and services as a vendor, independent contractor, consultant, or employee, which was the substance of all that ever had discussed with Roberts.

44. During the next two months, Roberts continued to express unfounded claims of being entitled to a greater role and/or an ownership interest relating to Groviv.

45. On February 1, 2018, Wood, Bentley, and other Groviv representatives met with Roberts and a group of individuals Roberts had assembled as a proposed team to work with Groviv. At the meeting, Roberts stated that he felt frustrated and like he was being distanced from the Groviv team.

46. At or near that time the parties also discussed Groviv formally hiring Roberts as a consultant, but Roberts refused unless the others agreed to name the first GroPod after him and to convey to him the title of a "founding partner" of Groviv. Although unequivocal and consistent in rejecting Roberts's unfounded claims of a general partnership or other ownership interest relating to Groviv, Groviv expressed a willingness to identify Roberts as a founding testing vendor partner of Groviv.

47. Roberts was thereafter encouraged to continue his involvement, in what was expressly communicated as his consultant capacity, and he was invited (at Groviv's expense) to

9

accompany Groviv representatives in attending the World Ag Expo tradeshow in Tulare, California, on February 12-16, 2018.

48. At the tradeshow Roberts met with an Algerian delegation and exchanged contact information. He initiated conversations with the Algerians about their interest in developing a dairy industry in Algeria. The conversations apparently included Groviv's business and the potential use of the GroPod technology for agricultural development in Algeria, along with a number of other potential projects that would be outside the core business of Groviv or Plaintiffs.

49. After the tradeshow, Roberts continued to pursue business discussions with the Algerians independently, including by taking multiple self-funded trips to Algeria to meet with them. Groviv and Nu Skin supported the dialogue and participated to a degree in discussions when Algerians visited the U.S.

50. By the end of March 2018, as a result of Roberts's farm's insufficient technological sophistication and distance from Groviv's operations, Groviv had decided to start using a dairy farm in Elberta, Utah, as a testing vendor rather than Roberts. This development greatly upset Roberts.

51. Nonetheless, Groviv continued to hope that Roberts would serve as a consultant, and hoped that the opportunity to provide GroPods in Algeria would bear fruit. Groviv was thus willing to pursue its own interests and also assist Roberts with pursuing his separate economic goals in Algeria, including by hosting and meeting with various Algerian officials and potential investors to discuss Groviv and the GroPod technology.

52. Because Roberts had a desire to pursue opportunities in Algeria that exceeded Groviv's level of interest, Roberts traveled to Algeria and had meetings and negotiations for his

own account. His independent efforts resulted in memoranda of understanding ("MOUs") signed between Algerian parties and Roberts International reflecting their intention to do business together. Neither Groviv nor Nu Skin are parties to any of the MOU's signed by Roberts International. That Roberts executed the MOUs in his own entity's name, and as of the date of this complaint has not provided copies to Groviv, demonstrates that he was pursuing his own economic interest separately from Groviv, rather than acting on behalf of a purported general partnership relating to Groviv.

### Roberts's Increased Demands and Threats of Litigation

53. Roberts now has made unfounded allegations of having a general partnership relating to Groviv, purportedly with a 50% ownership interest. He has made express threats of legal action against to compel recognition of that purported interest under the Utah Uniform Partnership Act ("UPA").

54. Groviv's operations to date, and Nu Skin's investment in Groviv, have involved substantial actual economic losses and no profits. Roberts has never contributed capital to Groviv and has not paid or offered to pay any share of the losses incurred.

55. In connection with his threats of taking legal action against Plaintiffs, Roberts is also suddenly claiming that he is an "inventor of the GroPod Technology."

56. Roberts asserts that he contributed to Grow Solutions' grow light technology, which is the subject of the claims in Grow Solutions' Patent No. US 10,034,434 B2.

57. Roberts also asserts that he contributed to certain other design aspects of the patented GroPod technology, including "suggesting" development of the technology to fit within a shipping container, to be "plug and play," to have a "moving race track," to be used in a "Pod,"

and to use a 6,000 gallon water tank. The first four of these purported suggestions were ideas that the inventors named on Grow Solutions' Patent No. US 10,034,434 B2 and patent applications concerning the GroPod technology developed independent of Roberts. The last purported suggestion is not, and has never been, a feature of the technology because use of a 6,000 gallon water tank with the GroPod would be highly impractical.

58. In connection with his threats of taking legal action against Plaintiffs, Roberts also has falsely accused Groviv of misappropriating confidential information and trade secrets of Roberts International relating to its manure operations, which he claims to have communicated to Groviv while performing his testing vendor services for Groviv. Plaintiffs have never appropriated any of Roberts's ideas.

59. As a result of the foregoing actual controversies between the parties and the associated legal uncertainties, Plaintiffs are entitled, for the reasons set forth below, to declarations of the rights and other legal relations of the parties regarding those controversies.

### FIRST CLAIM FOR RELIEF
### Declaratory Judgment under Utah Declaratory Judgment Act
### Regarding Application of Utah Uniform Partnership Act
### (Plaintiffs Against All Defendants)

60. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

61. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding whether any of the Defendants has a general partnership relating to Groviv under the UPA.

62. Plaintiffs are entitled to an order from this Court declaring that:

   a. None of the Defendants is a partner under a general partnership relating to Groviv under the UPA because the requirements to form a general partnership thereunder were never satisfied by any written or oral general partnership agreement with any of the Defendants or otherwise by the actions of any Plaintiff and any Defendant; and

   b. Roberts, acting on behalf of himself and/or any of the other Defendants, is entitled at most to compensation for his services to Groviv in his role as a vendor, independent contractor, consultant, or employee.

63. In the alternative, if this Court were to determine that any of the Defendants has a general partnership interest relating to Groviv under the UPA, Plaintiffs are entitled to an order from this Court declaring that such Defendant(s) must immediately pay his or its share of the losses of the general partnership and assume all of the other duties and obligations of a general partner under the UPA.

64. Pursuant to Utah Code § 78B-6-401, *et seq.*, declaratory relief is presently necessary and appropriate to resolve this partnership controversy and to clarify Plaintiffs' and

Defendants' respective rights, obligations, and legal relations as Groviv moves forward with its business operations.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment under Federal Declaratory Judgment Act
### Regarding Determination of Inventorship
### (Grow Solutions Against Roberts)

65. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

66. An actual and justiciable controversy exists between Roberts and Grow Solutions regarding whether Roberts is an inventor of Grow Solutions' grow light technology, which is the subject of the claims in Grow Solutions' Patent No. US 10,034,434 B2.

67. Grow Solutions is entitled to an order from this Court declaring that:

    a. Millar, who independently invented the grow light technology, is the properly named inventor on Grow Solutions' Patent No. US 10,034,434 B2 under 35 U.S.C. § 116; and

    b. Roberts, who is not listed on Grow Solutions' Patent No. US 10,034,434 B2 as an inventor of the grow light technology identified therein and who made no contribution to that technology, is not entitled to a correction of inventorship under 35 U.S.C. § 256.

68. Pursuant to 28 U.S.C. §§ 2201 and 2202, Grow Solutions is entitled to a declaratory judgment that, because Roberts made no contribution to the technology identified in Grow Solutions' Patent No. US 10,034,434 B2, Millar is the properly named inventor under 35 U.S.C. § 116 and Roberts is not entitled to a correction of inventorship under 35 U.S.C. § 256.

## THIRD CLAIM FOR RELIEF
### Declaratory Judgment under Federal Declaratory Judgment Act
### of No Misappropriation of Trade Secrets under the Defend Trade Secrets Act
### (Groviv and Grow Solutions Against Roberts and Roberts International)

69. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

70. Roberts has accused Groviv of misappropriating the alleged trade secret information of Roberts International relating to its manure operations.

71. In addition, Roberts asserts that he contributed to the Grow Solutions' grow light technology, which is the subject of the claims in Grow Solutions' Patent No. US 10,034,434 B2, and which was a trade secret of Grow Solutions, not Roberts, before Grow Solutions subsequently publicly disclosed it.

72. Roberts also asserts that he contributed to certain other design aspects of the GroPod technology, including "suggesting" development of the technology to fit within a shipping container, to be "plug and play," to have a "moving race track," and to be used in a "Pod." All of these features were also trade secrets of Grow Solutions, not Roberts, before Grow Solutions subsequently publicly disclosed them.

73. There presently exists a real and actual controversy between Roberts and Roberts International, on the one hand, and Groviv and Grow Solutions, on the other hand, regarding whether Roberts or Roberts International provided Groviv or Grow Solutions with any protected trade secret information that belonged to Roberts or Roberts International, and whether Groviv or Grow Solutions misappropriated any such alleged trade secret information.

74. Groviv and Grow Solutions maintain that they have not misappropriated any trade secret information of Roberts International relating to its manure operations, any trade secret

information of Roberts or Roberts International relating to the above-referenced design aspects of the GroPod technology, or otherwise because no information provided by Roberts or Roberts International to Groviv or Grow Solutions was trade secret information, because Groviv and Grow Solutions never agreed to any confidentiality obligations regarding any information provided to them by Roberts or Roberts International, and because at no time did Groviv or Grow Solutions misuse any information provided to them by Roberts or Roberts International.

75. The facts alleged show that there is a substantial controversy between Roberts and Roberts International, on the one hand, and Groviv and Grow Solutions, on the other hand, having adverse legal interests of sufficient immediacy and reality that, in light of Roberts's threats of taking legal action alleged above, warrant the issuance of a declaratory judgment.

76. Pursuant to 28 U.S.C. §§ 2201 and 2202, a declaratory judgment is necessary to confirm that Groviv and Grow Solutions have not misappropriated any trade secret of Roberts or Roberts International in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*

**FOURTH CLAIM FOR RELIEF**
**Declaratory Judgment under Utah Declaratory Judgment Act**
**of No Misappropriation of Trade Secrets under the Utah Uniform Trade Secret Act**
**(Groviv and Grow Solutions Against Roberts and Roberts International)**

77. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

78. Roberts has accused Groviv of misappropriating the alleged trade secret information of Roberts International relating to its manure operations.

79. In addition, Roberts asserts that he contributed to the Grow Solutions' grow light technology, which is the subject of the claims in Grow Solutions' Patent No. US 10,034,434 B2,

and which was a trade secret of Grow Solutions, not Roberts, before Grow Solutions subsequently publicly disclosed it through the patenting process.

80. Roberts also asserts that he contributed to certain other design aspects of the GroPod technology, including "suggesting" development of the technology to fit within a shipping container, to be "plug and play," to have a "moving race track," and to be used in a "Pod." All of these features were also trade secrets of Grow Solutions, not Roberts, before Grow Solutions subsequently publicly disclosed them through the patenting process.

81. There presently exists a real and actual controversy between Roberts and Roberts International, on the one hand, and Plaintiffs, on the other hand, regarding whether Roberts or Roberts International provided Plaintiffs with any protected trade secret information that belonged to Roberts or Roberts International, and whether any Plaintiff misappropriated any such alleged trade secret information.

82. Plaintiffs maintain that they have not misappropriated any trade secret information of Roberts International relating to its manure operations, any trade secret information of Roberts or Roberts International relating to the above-referenced design aspects of the GroPod technology, or otherwise because no information provided by Roberts or Roberts International to any Plaintiff was trade secret information, because Plaintiffs never agreed to any confidentiality obligations regarding any information provided to them by Roberts or Roberts International, and because at no time did any Plaintiff misuse any information provided to them by Roberts or Roberts International.

83. The facts alleged show that there is a substantial controversy between Roberts and Roberts International, on the one hand, and Plaintiffs, on the other hand, having adverse legal

interests of sufficient immediacy and reality that, in light of Roberts's threats of taking immediate legal action alleged above, warrant the issuance of a declaratory judgment.

84.     Pursuant to Utah Code § 78B-6-401, *et seq.*, a declaratory judgment is necessary to confirm that Plaintiffs have not misappropriated any trade secret of Roberts or Roberts International in violation of the Utah Uniform Trade Secrets Act, Utah Code § 13-24-1, *et seq.*

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      On the First Claim for Relief against all Defendants, for (a) declaratory judgment in Plaintiffs' favor that none of the Defendants has any ownership or general partnership interest relating to Groviv under the UPA and that Roberts, acting on behalf of himself and/or any of the other Defendants, is entitled at most to compensation for his services to Groviv in the role of a vendor, independent contractor, consultant, or employee; or (b) in the alternative, if this Court were to determine that any of the Defendants has a general partnership interest relating to Groviv under the UPA, declaratory judgment that such Defendant(s) must immediately pay his or its share of the losses of the general partnership and assume all of the other duties and obligations of a general partner under the UPA;

2.      On the Second Claim for Relief against Roberts, for a declaratory judgment in Grow Solutions' favor that, because Roberts made no contribution to the technology identified in Grow Solutions' Patent No. US 10,034,434 B2, Millar is the properly named inventor under 35 U.S.C. § 116 and Roberts is not entitled to a correction of inventorship under 35 U.S.C. § 256;

3.      On the Third Claim for Relief against Roberts and Roberts International, for a declaratory judgment in Plaintiffs' favor that Groviv and Grow Solutions have not

misappropriated any trade secret of Roberts or Roberts International in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*;

4. On the Fourth Claim for Relief against Roberts and Roberts International, for a declaratory judgment in Plaintiffs' favor that Groviv and Grow Solutions have not misappropriated any trade secret of Roberts or Roberts International in violation of the Utah Uniform Trade Secrets Act, Utah Code § 13-24-1, *et seq.*;

5. For costs incurred in bringing this action and for recovery of attorneys' fees and costs as allowed by law; and

6. For such other and further relief as this Court deems reasonable and just.

DATED this 22nd day of May 2019.

                                        PARR BROWN GEE & LOVELESS, P.C.

                                        /s/ Chad S. Pehrson
                                        Jeffrey J. Hunt
                                        Austin J. Riter
                                        Chad S. Pehrson
                                        *Attorneys for Nu Skin Enterprises, Inc., Growgenix Solutions LLC dba Groviv, and Grow Solutions Tech LLC*