IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GROWGENIX SOLUTIONS LLC, a Utah limited liability company, dba GROVIV; GROW SOLUTIONS TECH LLC, a Utah limited liability company, and NU SKIN ENTERPRISES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERTS INTERNATIONAL AGRICULTURAL DEVELOPMENT, LLC, a Utah limited liability company; ROBERTS CONSULTING & MARKETING, LLC, a Utah limited liability company; ROBERTS DAIRY, INC., a Utah corporation; DON ROBERTS, an individual; and DOES 1-10,<br><br>Defendants. | MEMORANDUM OPINION AND ORDER<br><br><br>Case No. 2:19-CV-359<br>Judge Dee Benson |

Before the court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil

Procedure 12(b)(1). (Dkt. No. 11.) The motion has been fully briefed by the parties and the

court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court finds that oral argument would not be helpful or necessary and elects to determine the motion on the basis of the written memoranda. DUCivR 7-1(f).

## BACKGROUND

### The Parties

The Plaintiffs include the following related business entities: Growgenix Solutions LLC, dba Groviv ("Groviv"); Grow Solutions Tech LLC ("Grow Solutions"); and Nu Skin Enterprises, Inc. ("Nu Skin"). Both Groviv and Grow Solutions are wholly owned subsidiaries of Nu Skin. (Dkt. 2, Compl. ¶¶ 12 - 17.) Nu Skin, through its subsidiary Groviv, seeks to commercialize and sell a system of "'controlled environment agriculture' in order to grow sustainable, clean, and nutritious crops using a fraction of the resources of traditional agriculture." (*Id.* ¶ 18.) Nu Skin created the subsidiary Grow Solutions for the purpose of owning the intellectual property rights that belong to the technology behind Groviv's system. The Grow Solutions technology "uses low-heat lighting applied to horticulture together with software and data in order to give plants the optimum amount of nutrients, water, lighting, and atmospheric conditions. (*Id.*) It can be used in "climate-controlled structures year-round in nearly any environment, and thereby solves many conventional agriculture problems relating to fresh water, arable land, chemical run-off, weather, and energy use." (*Id.*)

The Defendants include Don Roberts, a dairy farmer residing in Beaver County, Utah, as well as the following business entities, of which Roberts is the owner and principal: Roberts

Dairy, Inc. ("Roberts Dairy"); Roberts International Agricultural Development, LLC ("Roberts International"); and Roberts Consulting & Marketing, LLC ("Roberts Consulting"). Roberts Dairy consists of approximately 5,000 acres of land, 4,000 dairy cows, and feedlots for 1,000 beef cattle in Beaver County. Roberts International presents itself as an "agricultural development company" that was established to develop agricultural projects in "various international markets" and to provide "strategic agricultural business solutions." (Dkt. 2, Compl. ¶ 22.) Roberts Consulting offers consulting and management services relating to agricultural development." (*Id.* ¶ 23.)

**Brief History of the Parties' Relationship**

Over the course of approximately three years, Plaintiffs and Defendants developed a relationship based on their shared interest in agricultural development. Beginning in late 2016 and continuing through early 2017, Groviv (and eventually Groviv and Nu Skin) met with Roberts to explore the prospect of collaborating with Roberts and having Roberts serve as an "agricultural testing vendor" for Groviv. (Dkt. 2, Compl. ¶¶ 24-26.) The parties continued to communicate throughout 2017, and over time their discussions expanded to include the potential for Roberts to have more extensive involvement in Groviv's operations. (*Id.* ¶ 27.) The parties did not, however, precisely defined Roberts' role in the collaboration, nor did they clearly establish the contours of their business relationship. Nonetheless, the parties began working together, sharing ideas and potential plans, and on December 11, 2017, Groviv began a product research study at Roberts Dairy. (*Id.* ¶ 28.)

The parties continued to work together for the next year or so and, as they had discussed,

Roberts' involvement with and contributions to Groviv extended beyond simply hosting the research study. Although the parties now dispute the extent of Roberts' contributions as well as his role at Groviv, both sides agree that the precise terms of the business relationship were never reduced to a formal written agreement. Even so, the parties continued to discuss a variety of compensation options for Roberts' involvement and contributions, including potential salary, expense reimbursement, consulting compensation, and stock options. (Dkt. 2, Compl. ¶¶ 36-49.)

By early 2019, however, it had become clear that Nu Skin and Roberts had vastly different perspectives regarding the nature and scope of their relationship. Roberts sensed he was being demoted and felt as though Nu Skin was "looking to cut him out." (Dkt. 11-1 (Sealed) at 9.) By April 2019, the relationship had soured.

On April 30, 2019, Roberts, through counsel, sent a 14-page demand letter to Nu Skin ("Demand Letter" or "Letter") detailing Roberts' perspective of the business relationship between Roberts and Nu Skin, as well as Roberts' perceived contributions to Groviv's technology and operations. (Dkt. 11-1 (Sealed), Demand Letter.) In the concluding section of the Letter, under the heading "DEMAND," it reads: "As is clear from the facts and the law, Nu Skin formed a general partnership with Roberts as co-owners of [the] innovative technology [claimed in the '564 Patent Application] and Groviv. Thus Roberts is an equal partner in the operations and future of Groviv . . . ." (*Id.* at 13.)

On May 22, 2019, Plaintiffs filed the Complaint in this case pursuant to the Utah Declaratory Judgment Act and the Federal Declaratory Judgment Act. (Dkt. 2, Compl. at 13-16.) The Complaint contains four causes of action, seeking a declaratory judgment on each claim as

4

follows: (1) that none of the Defendants has a general partnership interest relating to Groviv under the Utah Uniform Partnership Act (Utah Code § 48-1d-100, *et seq.*); (2) that Roberts made no contribution to the technology identified in Grow Solutions' Patent No. '434 and thus Roberts is not entitled to a "correction of inventorship" under the Patent Act (35 U.S.C. § 256); (3) that Groviv and Grow Solutions have not misappropriated any trade secret of Roberts or Roberts International in violation of the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*); and (4) that Groviv and Grow Solutions have not misappropriated any trade secret of Roberts or Roberts International in violation of the Utah Uniform Trade Secrets Act (Utah Code § 13-24-2, *et seq.*).

Plaintiffs assert that their Complaint for Declaratory Relief is proper because the Demand Letter "details extensive claims and allegations that confer federal jurisdiction" over Plaintiffs' claims. (Dkt. 21 at 1.) Specifically, Plaintiffs assert: (1) that the "facts alleged, under the totality of the circumstances," show a "substantial controversy between the parties," and (2) that federal question jurisdiction is present because the Patent Act claim and Defend Trade Secrets Act claim "arise under the laws of the United States." (Dkt. 21 at 4, citing 28 U.S.C. § 1331.) As for the state-law claims, Plaintiffs assert that this court has supplemental jurisdiction over them because they are "so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy." (Compl. ¶ 10, citing 28 U.S.C. § 1367.)

On July 2, 2019, Defendants filed the present motion to dismiss, pursuant to Federal Rule of Civil Procedure 21(b)(1), arguing that Plaintiffs' Complaint For Declaratory Relief should be dismissed in its entirety for lack of jurisdiction. (Dkt. 9 at 1.) Directing the court's attention to

5

the Demand Letter, Defendants claim that the actual dispute between the parties is focused on the following two issues: (1) the formation of a partnership, alleging that "Roberts and Nu Skin had formed a Roberts–Nu Skin Partnership and as a result [Roberts] was entitled to all the legal rights of a general partner," and (2) the inventorship of the '564 Application, alleging that Roberts should be identified as an inventor of the subject matter disclosed in the '564 patent application. (Dkt. 11 at 13.)

In other words, Defendants argue that there is no "actual controversy" between the parties as to Plaintiffs' claims under federal law (the Patent Act and Defend Trade Secrets Act[1]), and therefore those claims should be dismissed. Additionally, Defendants assert that even though there is an actual dispute under the Utah Uniform Partnership Act [Plaintiffs' First Cause of Action], this claim turns entirely on the application of state law which is outside the scope of the limited jurisdiction conferred to the federal courts." (Dkt. 9 at 1.)

## **DISCUSSION**

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be brought." 28 U.S.C. § 2201(a). When determining whether subject matter jurisdiction exists, "[t]here are 'two separate hurdles for parties seeking a declaratory judgment to overcome,' a Constitutional one and a discretionary one." *Icon Health and Fitness, Inc. v. Relax-a-cizor Prods., Inc.*, 2012 WL 1604376, *1 (D. Utah May 7, 2012)

---

[1] Defendants argue there is no actual dispute regarding Plaintiffs' state-law trade secret misappropriation claim for essentially the same reasons as the federal claim.

(quoting *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).

To overcome the Constitutional hurdle, "a declaratory judgment plaintiff must present the court with a suit based on an actual controversy, a requirement that the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Surefoot*, 531 F.3d at 1240; *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 2053 (Fed. Cir. 1995) ("A declaratory judgment action permits a threatened party to resolve its potential liability, but only when the situation has progressed to an actual controversy, as required by Article III of the Constitution."). A "controversy" in this sense must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and must be "real and substantial," and admit of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). According to the Supreme Court: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*[2]

However, the Declaratory Judgment Act is not an independent source of jurisdiction. *Skelly Oil Co. v. Phillips Petroleum* Co., 339 U.S. 667, 672 (1950); *Cardtoons, L.C. v. Major*

---

[2] The second hurdle – the discretionary hurdle – provides that even if the court determines that a substantial controversy exists, the court "'may'–not 'must'–make a declaration on the merits of the controversy; accordingly, [The United States Court of Appeals for the Tenth Circuit] held that district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Surefoot*, 531 F.3d at 1240.

*League Baseball Players Ass'n,* 95 F.3d 959, 964 (10th Cir. 1996). "[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Id.* (citation omitted). Thus, in such actions, federal question jurisdiction exists if the potential suit by the declaratory judgment defendant would arise under federal law, consistent with 28 U.S.C. § 1331. *See Cardtoons,* 95 F.3d at 964; *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997).

With these principles in mind, the court considers each of Plaintiffs' claims arising under federal law to determine whether this court has jurisdiction over Plaintiffs' Complaint for Declaratory Relief.

### **Patent Act Claim – Inventorship of the '434 Patent**

Plaintiffs' second claim for relief seeks a declaratory judgment that Roberts "made no contribution to the technology identified in the '434 Patent . . . and [that] Roberts is not entitled to a correction of inventorship under 35 U.S.C. § 256." (Dkt. 2 at ¶ 68.) Having considered the facts alleged, under all the circumstances, the court finds there is no justiciable controversy regarding Plaintiffs' claim under the Patent Act.

The court is not aware of any claims made by Roberts regarding the inventorship of the '434 Patent. Not only does the Demand Letter fail to include any assertions that Roberts was involved with technology identified in the '434 Patent, the Demand Letter does not mention the '434 Patent.[3]

---

[3] The Demand Letter does, however, discuss the '564 Application, and makes explicitly clear that Roberts does dispute "whether the proper inventors were listed on the '564 Application." (Dkt. 11-1 (Sealed) at 11-13.) The Letter expresses Roberts' belief that he should be identified as an inventor of the apparatus described in the '564 Application, and that he

In fact, Roberts has expressly acknowledged that the invention of the subject matter claimed in the '434 Patent was invented prior to his involvement with Nu Skin, and that the filing of the '434 Patent predated his involvement with Nu Skin. (Dkt. 23 at 5.) Moreover, Roberts has expressly disclaimed any right to be considered an inventor of the subject matter contained in the '434 Patent. He executed a Covenant Not to Sue regarding the inventorship of the '434 Patent, mooting the possibility there could be a dispute over the '434 Patent in the future. (Dkt. 9-4, Roberts' Covenant Not to Sue, July 2, 2019).)

Finally and significantly, Plaintiffs have conceded that they "do not dispute that their claim for declaratory judgment under the Patent Act for a determination of inventorship as to the '434 Patent is now likely moot given Roberts' Covenant Not to Sue on the '434 Patent." (Dkt. 21 at 15.) *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109-10 (10th Cir. 2010) ("Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."); *USANA Health Sciences, Inc. v. SmartShake US, Inc.*, 2018 WL 2709215, at *6 (D. Utah June 5, 2018) (holding "the unilateral covenant not to sue . . . mooted the current action"); *see also Arris Group, Inc. v. British Telecommunications PLC*, 639

---

intends to take action to correct the inventorship. (*Id.*)

However, even if Plaintiffs had included the '564 Application in their Cause of Action under the Patent Act, it would not present a federally justiciable claim because it is a *pending patent application*. "The federal courts have no authority to adjudicate inventorship with respect to pending patents," as "Congress has explicitly vested the Patent and Trademark Office with sole discretion over the 'granting and issuing of patents.'" *Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 756 F.3d 327, 334 (5th Cir. 2014) (citing 35 U.S.C. § 2(a)(1)); *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010), *as amended on reh'g in part* (June 14, 2010) (providing that district courts are precluded "from granting . . . a declaration of the "true" inventor of a pending patent application"); *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003) (providing that a "district court lack[s] jurisdiction to review the inventorship of an unissued patent").

9

F.3d 1368, 1380 (Fed. Cir. 2011) (recognizing that patentee's grant of covenant not to sue supplier for infringement can eliminate the supplier's standing to bring declaratory judgment action).

Because Plaintiffs' Patent Act claim fails to present a justiciable controversy, Plaintiffs' Second Cause of Action is dismissed for lack of subject matter jurisdiction under the Federal Declaratory Judgment Act.

**Trade Secret Claims**

Plaintiffs' Third and Fourth Causes of Action seek a judgment that Plaintiffs "have not misappropriated any trade secret of Roberts or Roberts International" in violation of the Federal Defend Trade Secrets Act or in violation of the Utah Uniform Trade Secrets Act, respectively. (Dkt. 2, Compl. at 15-18.) To support these causes of action, Plaintiffs assert that Roberts made "extensive claims" regarding his "central and innovative contributions to Groviv's technology and operations," and that these claims by Roberts' created a "reasonable apprehension of the imminence" of a lawsuit containing claims for misappropriation of trade secrets, particularly with regard to Roberts' manure operations as well as the technology claimed in the '564 Application. (Dkt. 21 at 5, 10.)

By way of background, the Defend Trade Secrets Act provides that a "trade secret" includes "information that derives value from being secret and that the owner took reasonable measures to keep secret." 18 U.S.C. § 1839(3)(A), (B). "Misappropriation" consists of: "(a) acquisition of a trade secret by a person who knows or should know the secret was improperly acquired or (b) disclosure or use of a trade secret of another without express or implied consent."

*Ultradent Products, Inc. v. Spectrum Solutions LLC*, 2018 WL 324868, at *2 (D. Utah Jan. 8, 2018).

Similarly, under the Utah Uniform Trade Secrets Act, a "trade secret" includes information that "(1) derives economic value from not being known or readily ascertainable by others, and (2) is the subject of reasonable efforts to maintain its secrecy." *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC,* 274 P.3d 317, 323 (Utah 2012). "Misappropriation" of a trade secret requires a plaintiff to show: (1) the existence of a trade secret, (2) communication of the trade secret under an express or implied agreement limiting disclosure of the secret, and (3) the use of the secret that injures the owner. *Id.*

### Roberts' Manure Operation

The "General Allegations" in Plaintiffs' Complaint contain only one paragraph specifically addressing the threat of litigation for misappropriation of trade secrets. This paragraph focuses exclusively on Defendants' manure operation and states: "In connection with his threats of taking legal action against Plaintiffs, Roberts also has falsely accused Groviv of misappropriating confidential information and trade secrets of Roberts International relating to his manure operations, which he claims to have communicated to Groviv while performing his testing vendor services for Groviv. Plaintiffs have never appropriated any of Roberts's ideas." (Dkt. 2, Compl. ¶ 58.) Additionally, in response to Defendants' motion, Plaintiffs assert: "There is no doubt that the alleged information regarding the manure operation qualifies as a trade secret." (Dkt. 21 at 14.) These allegations stand in sharp contrast to Defendants' reference to the manure operation in the Demand Letter. In a single footnote under "Factual Background,"

the Demand Letter states: "Around this time, Roberts proposed the idea of potentially pursuing compost as a source of income." (Dkt. 11-1 (Sealed) at 7 n.6.)

However, even taking Plaintiffs' allegations regarding the manure operations as true, and even assuming, as Plaintiffs conclude, that Roberts' manure operations constituted a "trade secret," the court finds that the facts and surrounding circumstances fail to show an actual dispute regarding the misappropriation of Roberts' manure operation that is "definite and concrete" and of "sufficient immediacy and reality." *See MedImmune, Inc.*, 549 U.S. at 127. Significantly, there are no allegations, in either the Complaint or the Demand Letter, to suggest that Plaintiffs have ever used or disclosed Roberts' manure operation or the ideas behind Roberts' manure operation, and nothing to suggest that Plaintiffs might do so in the future. Consequently, any dispute about the misappropriation of Roberts' manure operation is hypothetical because it is premised on the notion that Plaintiffs could or might begin to use or disclose Roberts' manure operation ideas in the future. In other words, lacking anything to suggest a "misappropriation," this claim has not ripened into an actual controversy. *See, e.g., Matthews Intern. Corp. v. Biosafe Engineering, LLC*, 695 F.3d 1322, 1328-31 (Fed. Cir. 2012); *see also, e.g., Sandoz Inc. v. Amgen Inc.,* 733 F.3d 1274, 1277-82 (Fed. Cir. 2014) (finding controversy was premature because it was uncertain whether plaintiff would begin selling the infringing product).

<u>Roberts' Contributions to the Technology in the '564 Patent Application</u>

Next, the court considers Plaintiffs' trade secret claim based on Roberts' alleged contributions to the technology identified in the '564 Application. Plaintiffs acknowledge that

the controversy in this case is rooted in the Demand Letter, and Plaintiffs also acknowledge that their trade secret claims are to a large extent based on Defendants' "extensive claims" in the Demand Letter regarding "his central and innovative contributions" to the GroPod Technology." (Dkt. 21 at 5, 10, 14.) Plaintiffs argue that Defendants' alleged contributions to the technology listed in the '564 Application are trade secrets, causing Plaintiffs to have a "reasonable apprehension of the imminence" of a lawsuit containing a trade secret misappropriation claim. (Dkt. 21 at 5, 10.)

Defendants do not dispute that Roberts purports to have made numerous and significant contributions to Groviv's operations and technology; specifically, that he provided ideas and information that helped develop the technology behind Groviv's main product, the GroPod, which is the same technology claimed in the '564 Application. (Dkt. 11-1 (Sealed) at 11.) However, Defendants argue that Roberts' alleged contributions to Groviv's technology do not create an actual controversy regarding trade secret misappropriation because Roberts also overtly alleges that these contributions to Groviv's technology were made voluntarily, and in accord with Roberts' understanding that he was a general partner in the Roberts–Nu Skin Parternship. The court agrees.

Despite Roberts' "extensive claims" of "contributions to Groviv's technology," the Demand Letter never characterizes any of Roberts' contributions, ideas, or knowledge as a "trade secret," nor does the Letter suggest, even indirectly, that any such contribution might be a potential trade secret. Additionally, the Demand Letter does not allege that Roberts took any reasonable measures to protect his shared ideas or technological contributions, or that he offered

13

his contributions to the alleged Roberts–Nu Skin partnership subject to an agreement limiting their disclosure. And finally, there is nothing in the Demand Letter that claims or otherwise suggests that Nu Skin used Roberts' ideas and contributions without his express or implied consent. *Id.* In fact, the Demand Letter states quite the opposite, asserting that in his capacity as a general partner with Nu Skin, Roberts voluntarily collaborated and openly shared his ideas with Nu Skin for the benefit of the partnership. (Dkt. 11-1 (Sealed) at 11.)

As Defendants explain, the dispute between the parties is not about Nu Skin's "*use* of Roberts' contributions, ideas and information on behalf of what Roberts perceived was a Roberts–Nu Skin Partnership (conduct Roberts sanctioned on the belief he was a general partner). Rather, the dispute is about "Nu Skin's *failure to recognize* [Roberts'] role" in the Roberts–Nu Skin Parternship. (Dkt. No. 11-1 (Sealed) at 4-6, 11; *see also* Dkt. 23 at 9, explaining Roberts' belief that he contributed significantly to a Roberts-Nu Skin Partnership, but now Nu Skin is no longer willing to treat him as a general partner or even identify him as a named inventor on the '564 Application.)

Accordingly, the court finds that although the facts alleged, under all the circumstances, may have caused "a reasonable apprehension of the imminence of suit," they did not indicate that Defendants' potential suit could contain a federal [trade secret] claim." *Cardtoons, L.C.,* 95 F.3d at 965. Therefore, the court concludes that Plaintiffs' trade secret misappropriation claims fail to present a justiciable controversy, and Plaintiffs' Third and Fourth Causes of Action are dismissed for lack of subject matter jurisdiction under the Federal Declaratory Judgment Act.

**Partnership Claim**

Defendants do not dispute that this case presents an actual controversy regarding Plaintiffs First Cause of Action seeking a declaratory judgment that none of the Defendants has a general partnership with Nu Skin relating to an interest in Groviv. (Dkt. 11 at 13; Dkt. 23 at 9.)

However, having dismissed each of Plaintiffs' claims arising under federal law, the court declines to exercise supplemental jurisdiction over Plaintiffs' partnership claim, which is based entirely on state law and governed by the Utah Uniform Partnership Act, 48-1d-101, *et seq.* Accordingly, the court dismisses the state-law claim without prejudice. *See* 28 U.S.C. § 1367(c)(3) (providing that district court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it had original jurisdiction); *see Board of County Commissioners of Sweetwater County v.* Geriner, 297 F.3d 1108 (10th Cir. 2002) ("The district court's ruling [in which it declined to review the state-law claims] comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal clams are dismissed before trial.").

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief is GRANTED.[4]

---

[4] Even if Plaintiffs' Complaint presented a federally justiciable cause of action, the court would nonetheless exercise its discretion and decline to adjudicate the case. *See Surefoot*, 531 F.3d 1236, 1240 (10th Cir. 2008). After reviewing the five factors set forth in *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), the court finds the first factor ("whether a declaratory action would settle the controversy") and the fifth factor ("whether there is an alternative remedy which is better or more effective") to be relevant, instructive and weigh against exercising jurisdiction. Given the pendency of the '453 Application, any declaratory judgment would not settle the controversy between the parties. Additionally, federal courts have

DATED this 19th day of December, 2019.

_____
Dee Benson
United States District Judge

---

recognized that the U.S. Patent and Trademark Office, with its expertise and statutorily provided framework, is better suited and a more effective forum to resolve the parties' dispute regarding the inventorship of the subject matter disclosed in the '564 Application. *See Display Research Laboratories*, 133 F. Supp. 2d at 1175. Thus, the court would decline to adjudicate the case in favor of having the U.S. Patent and Trademark Office resolve the pending '564 Application, and in favor of having the state court resolve the partnership dispute.